NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRYANT YOUNG,<br><br>    Plaintiff,<br><br>v.<br><br>THE CITY OF HACKENSACK,<br>HACKENSACK POLICE OFFICERS or<br>SUPERVISORY POLICE OFFICERS, and<br>DOES 1-5, Inclusive,<br><br>    Defendants. | 04-CV-2011 (WJM)<br><br>OPINION |

Bryant Young
170 Prospect Avenue, Apt. 5E
Hackensack, New Jersey 07601
*Pro Se Plaintiff*

Deena B. Rosendahl
Kaufman, Bern & Deutch L.L.P.
Two Executive Drive
Fort Lee, New Jersey 07024
*Attorney for Defendants*

**MARTINI, U.S.D.J.:**

      This matter comes before the Court on defendants' Motion for Summary Judgment seeking to dismiss plaintiff's complaint and to impose sanctions on plaintiff.  There was no oral argument.  Fed. R. Civ. P. 78.  After full consideration, defendants' motion is **GRANTED**, plaintiff's complaint is **DISMISSED** in its entirety, and defendants' request for sanctions is **DENIED**.

1

**BACKGROUND**

This is a civil rights action arising out of the arrest of Bryant Young, *pro se* plaintiff, by members of the Hackensack and New York State police departments.  On May 3, 2002, Detective Sergeant Stephen Moger of the Hackensack Police Department learned from his Captain that officers from New York had requested the department's assistance in making an arrest later that evening.  At approximately 9:30 p.m., New York State police officers Sergeant Michael Enright, Detective Terry Leto, and Detective Joseph Calabrese appeared in the Hackensack Police Department to effectuate the arrest.  Sergeant Enright informed officer Moger that plaintiff was charged with Aggravated Harassment in the Second Degree and that this was a felony offense because the alleged victim was a police officer.  Sergeant Enright presented officer Moger with a New York warrant issued by Magistrate Judge James D. Gibbons that ordered plaintiff's arrest.  He also provided officer Moger with a mugshot pedigree of plaintiff along with his Hacksensack address.

Hackensack police officers then accompanied the New York officers to plaintiff's residence and arrested plaintiff.  Subsequently, plaintiff was detained in the Bergen County Justice Center, Hackensack, New Jersey, on the charge of being a fugitive from justice until he posted bail on May 9, 2002.  On April 29, 2004 plaintiff filed a complaint against the defendants predicated on alleged violations of his civil rights pursuant to 42 U.S.C. § 1983.

Plaintiff's § 1983 claims allege violations of his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights.  In essence, plaintiff alleges that Hackensack police officers arrested him without a valid New York arrest warrant, and that he could not be lawfully arrested without the issuance of a New Jersey arrest warrant.  All of plaintiff's claims arise out of the

arrest on May 3, 2002. Because plaintiff introduces no evidence to support his claims that his arrest and detainment violated his constitutional rights, the Court grants defendants' Motion for Summary Judgment and plaintiff's complaint is dismissed.

## ANALYSIS

**I.      Summary Judgment Standard**

Summary judgment eliminates unfounded claims without resorting to a costly and lengthy trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). However, a court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *Celotex*, 477 U.S. at 323. A litigant may discharge this burden by exposing "the absence of evidence to support the nonmoving party's case." *Id.* at 325. In evaluating a summary judgment motion, a court must view all evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).

Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The substantive law determines which facts are material. *Anderson*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment." *Id.* No issue for trial exists unless the nonmoving party can demonstrate sufficient evidence favoring it such that a reasonable jury could return a verdict in that party's favor. *Id.* at 249.

**II.     Plaintiff's § 1983 Claims Alleging Violations Of His Constitutional Rights Are Unsubstantiated**

For a § 1983 claim to survive summary judgment, there must be some evidence that: (1) the conduct complained of was committed by a person acting under color of law; and (2) this conduct deprived plaintiff of rights, privileges or immunities secured by the U.S. Constitution or laws of the United States. *See Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1142 (3d Cir. 1990).

Plaintiff's § 1983 claims are predicated on alleged violations of his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. (*See* Compl. ¶¶ 29, 33). There is, however, no evidence to support plaintiff's § 1983 claims that his federal constitutional rights were violated.

**A.     The First, Fifth, and Sixth Amendments Are Not Implicated by Plaintiff's Allegations**

Plaintiff alleges that his § 1983 claims are based in part on violations of his First, Fifth, and Sixth Amendment rights. (*See* Compl. ¶¶ 29, 33). The First Amendment serves to protect the free exercise of religion and the freedom of speech and assembly. *See* U.S. CONST. amend. I. However, plaintiff produces no evidence that his First Amendment rights were infringed upon, and his deposition acknowledges the groundlessness of this claim. (*See* Pl.'s Dep. at 131:11-13).

4

The Sixth Amendment involves the right to a speedy trial and to counsel. *See* U.S. CONST. amend. VI. "[T]he Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences." *United States v. Sprouts*, 282 F.3d 1037, 1042 (8th Cir. 2002) (citation omitted). Generally speaking, a defendant's trial must occur within seventy days of his indictment or first appearance, whichever occurs later. *See* 18 U.S.C. § 3161(c)(1). Because plaintiff's case did not go to trial, his right to a speedy trial is not at issue. In addition, because plaintiff's brief acknowledges that he had access to counsel, plaintiff's § 1983 claims fail to state any Sixth Amendment violations. (*See* Pl.'s Opp'n Br. at 4).

Similarly, plaintiff fails to raise a claim predicated on violations of the Fifth Amendment. The Fifth Amendment applies only to federal actors. *See Barkus v. Illinois*, 359 U.S. 121, 124 (1959). Because plaintiff's claims are brought only against municipal actors, the Fifth Amendment has no applicability in this case.

Accordingly, summary judgment is granted in defendants' favor on plaintiff's First, Fifth, and Sixth Amendment claims.

### B. Plaintiff Has No Viable Fourth Amendment Claims

Plaintiff alleges that his § 1983 claims are based in part on a violation of the Fourth Amendment. (*See* Compl. ¶¶ 29, 33). The Fourth Amendment protects against unreasonable searches and seizures by the government and its agents. *See* U.S. CONST. amend. IV. Reasonableness is evaluated from the perspective of a government actor at the scene, not with the benefit of 20/20 hindsight. *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Plaintiff's alleged Fourth Amendment violations are predicated on a claim of false arrest. The central issue in determining liability in a § 1983 action based on a claim of false arrest is "whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988). "Probable cause to arrest exists where the arresting officer has knowledge of facts and circumstances sufficient to permit a prudent person of reasonable caution to believe that the person arrested has committed an offense." *Kis v. County of Schuylkill*, 866 F. Supp. 1462, 1469 (E.D. Pa. 1994) (citation omitted). Moreover, "[i]t is well-settled that probable cause to arrest generally exists when a police officer makes an arrest pursuant to a warrant which meets the requirements of the Fourth Amendment." *Id.* (citing *Baker v. McCollan*, 443 U.S. 137, 144 (1979)).

Plaintiff challenges the validity of the New York arrest warrant on three grounds. First, plaintiff alleges that the "warrant" was not an actual New York warrant, but an application for a warrant because it identifies itself as a "Warrant Investigation Report." (*See* Pl.'s Opp'n Br. at 5; Pl.'s Dep. at 40:25-41:10). However, plaintiff presents no evidence to support his allegation that the document functions solely as an application for a warrant. Rather, plaintiff only argues to that effect, and, in doing so, fails to address the fact that the document on its face is signed by a Magistrate Judge and orders plaintiff's arrest. Absent any evidence challenging the facial validity of the document, and confronted with the uncontested facts that it is signed by a judge and orders plaintiff's arrest, the Court finds no reason to question its validity as a genuine arrest warrant.

Second, plaintiff alleges that the warrant was facially invalid because the underlying offense, Aggravated Harassment in the Second Degree, is a not a felony. (*See* Pl.'s Opp'n Br. at

6

4; Pl.'s Dep. at 133:14-25). However, this argument is inapt; the warrant does not represent that the offense is a felony. Rather, that was a representation made by Sergeant Enright when tendering the warrant to officer Moger.

Third, plaintiff alleges that a New York warrant could not lawfully be used to make an arrest in New Jersey. (*See* Pl.'s Opp'n Br. at 5-6). The Court notes that plaintiff does not cite any authority for the claim that New Jersey police officers may not rely on out-of-state warrants in making arrests. Indeed, as articulated by a sister Circuit, that notion has been put to rest: "[N]either precedent nor logic requires a second arrest warrant to be obtained when a valid warrant has been issued in another state." *United States v. Smith*, 131 F.3d 1392, 1397 (10th Cir. 1997). In fact, other courts have found that an out-of-state warrant provides officers with probable cause for making an arrest. *See Case v. Kitsap County Sheriff's Dept.*, 249 F.3d 921, 927-28 (9th Cir. 2001) (Washington police officers had probable cause to arrest subject in her home based on an Oregon arrest warrant entered into a national crime database.); *Berigan v. State*, 236 A.2d 743, 744-45 (Md. Ct. Spec. App. 1968) (District of Columbia police officers had probable cause to make an arrest based on their knowledge of an outstanding Maryland fugitive warrant.); *United States v. Towne*, 870 F.2d 880, 884 (2d Cir. 1989) (Vermont police officer had probable cause to make an arrest based on knowledge of a New Hampshire fugitive warrant, after officer contacted out-of-state authorities to confirm the warrant and requested and received a certified copy before making the arrest.).

Accordingly, the Court finds the uncontested evidence supports defendants' claim that the document is a genuine arrest warrant and that it provided probable cause for plaintiff's arrest.

Therefore, summary judgment is granted in favor of defendants as to plaintiff's Fourth Amendment claim.

### C. Plaintiff Has No Viable Eighth Amendment Claims

Plaintiff alleges that his § 1983 claims are based in part on a violation of the Eighth Amendment. (*See* Compl. ¶¶ 29, 33). In *Estelle v. Gamble*, the Supreme Court noted that "the primary concern of the drafters [of the Eighth Amendment] was to proscribe 'torture[s]' and other 'barbar[ous]' methods of punishment." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citations omitted). The Supreme Court has also held that the right of pretrial detainees to be free from punishment is protected under the Due Process Clause of the Fourteenth Amendment because a State only acquires the power to punish once a guilty conviction is secured. *See Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979). In order to allege a constitutional violation regarding detainment, plaintiff must establish that the detainment is "imposed for the purpose of punishment [rather than as] an incident of some other legitimate governmental purpose." *Id.* at 538. "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* at 539.

In the instant case, plaintiff's complaint fails to allege that his arrest or detainment rises to the level of punishment. Plaintiff introduces no evidence of experiencing any physical or psychological injuries while arrested or during his detainment, and admits he was not beaten or otherwise assaulted at any time. (*See* Pl.'s Dep. at 97:22-24). Rather, plaintiff alleges a violation of his constitutional rights based on his being processed as a fugitive. (*See* Pl.'s Dep. at 132:22-

23) ("I'm not dismissing [the Eighth Amendment claim based] on the fact that they processed me as a fugitive.").

Even construing plaintiff's claim as falling under the Due Process Clause of the Fourteenth Amendment, plaintiff provides no legal support for the existence of a right not to be designated a fugitive, much less how that designation would rise to the level of punishment. Plaintiff introduces no evidence that the defendants acted for any other reason than that they believed a New York warrant existed for plaintiff's arrest. Moreover, the Third Circuit has recently found that there is no clearly established constitutional right not to be designated a fugitive. *See Mitchell v. Obenski*, No. 04-3730, 2005 U.S. App. LEXIS 11292, at *11 (3d Cir. June 14, 2005). Hence, plaintiff's erroneous Eighth Amendment claim must be dismissed along with any liberty interests protected under the Due Process Clause of the Fourteenth Amendment. Therefore, summary judgment is granted in favor of defendants as to plaintiff's Eighth Amendment claim.

        **D.**       **There Is No Evidence to Support Plaintiff's Fourteenth Amendment Claims**

Plaintiff alleges that his § 1983 claims are based in part on a violation of the Fourteenth Amendment (specifically, his right to equal protection under the law). (*See* Compl. ¶¶ 29, 33). For an Equal Protection Clause claim under § 1983 to survive summary judgment, there must be some evidence of an allegedly offensive categorization that invidiously discriminates against a disfavored group. *Price v. Cohen*, 715 F.2d 87, 91 (3d Cir. 1983). This discrimination must be purposeful and the plaintiff must receive different treatment than that received by other similarly

9

situated persons. *Id.* at 92; *Kuhar v. Greensburg-Salem Sch. Dist.*, 616 F.2d 676, 677 n.1 (3d Cir. 1980). In this case, there is no evidence from which a reasonable jury could conclude that plaintiff was treated differently because of his race or ethnicity by the defendants in connection with his arrest on May 3, 2002 and subsequent detainment. Indeed, plaintiff's deposition acknowledges that he is not alleging discrimination based on his race or ethnicity. (*See* Pl.'s Dep. at 109:4-25).

Liberally construed, plaintiff's Fourteenth Amendment claim is that the defendants treated plaintiff differently (arrested him) because he is not a police officer. (*See* Pl.'s Dep. at 109:4-25, 130:8-14). While this theory may be novel, it does not satisfy the requirements for establishing a violation of the Equal Protection Clause. Because plaintiff does not introduce any evidence that his arrest was based on prohibited characteristics such as race or ethnicity, plaintiff's Fourteenth Amendment claim is hereby dismissed. Therefore, summary judgment is granted in favor of defendants as to plaintiff's Fourteenth Amendment claim.

### III.     Even If There Were Any Evidence of Constitutional Violations, Plaintiff's § 1983 Claims Fail Because Defendants Are Entitled to Immunity

The defendants argue that because the Hackensack police officers and the City of Hackensack are entitled to qualified immunity, summary judgment is appropriate. Because the Court agrees, summary judgment is granted for this alternative reason.

Even if one or more of the defendants violated plaintiff's constitutional rights, summary judgment is appropriate if the defendants' conduct was based on an objectively reasonable belief that probable cause existed for plaintiff's arrest and detention. *See Orsatti v. New Jersey State*

*Police*, 71 F.3d 480, 483 (3d Cir. 1995). The reasoning behind the qualified immunity doctrine is that "[r]eliance on the objective reasonableness of an official's conduct, as measured by clearly established law, should avoid excessive disruptions of government and permit the resolution of many insubstantial claims on summary judgment." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (citations omitted).

Having already concluded that defendants had probable cause to make plaintiff's arrest based on the New York warrant, the Court finds that defendants are entitled to immunity for all alleged constitutional violations arising out of the incident. The Court's reasonableness determination is informed by how other courts have ruled in similar situations. Arrests based upon out-of-state information have been found reasonable in a variety of situations, and police officers have been found to have immunity when acting on such information. *See Donta v. Hooper*, 774 F.2d 716, 721 (6th Cir. 1985) (Ohio police officers were entitled to immunity after making an arrest based on a teletype from Kentucky police officers that did not recite the existence of a warrant.), *cert. denied,* 483 U.S. 1019 (1987); *Lowrance v. Pflueger*, 878 F.2d 1014, 1020 (7th Cir. 1989) (Wisconsin police officers were entitled to immunity when making an arrest based on an out-of-state warrant that had been entered into a national crime database.); *Roa v. Bethlehem*, No. 89-5013, 1991 U.S. Dist. LEXIS 4437, at *1-*2 (E.D. Pa. Apr. 2, 1991) (Pennsylvania police officers were entitled to immunity after arresting a suspect based on their knowledge of an outstanding New Jersey warrant.).

Based on the evidence before them, the defendants' actions were reasonable. They were informed by a fellow officer that the document was an arrest warrant for plaintiff, and on its face the document is signed by a judge and orders the arrest of plaintiff. *Cf. Rogers v. Powell*, 120 F.3d at 454-55 (stating that police officers will be entitled to qualified immunity for unlawful arrest when it was objectively reasonable to believe, on the basis of oral statements from fellow police officers, that probable cause existed for the arrest).

In addition, this Circuit recently found that an officer who played no part in obtaining a fugitive warrant is not liable "for executing a warrant prepared by another officer and signed by a judge" even if "we assume, *arguendo*, that there were actionable defects in the manner in which [the other officer] obtained the warrant." *Mitchell v. Obenski*, 2005 U.S. App. LEXIS 11292, at *13. Thus, this Court finds it was reasonable for the defendants to rely on the evidence before them in arresting plaintiff. Accordingly, the individual defendants are entitled to qualified immunity from civil liability for any constitutional violations that may have occurred.

**IV.     Even If There Were Any Evidence Of Constitutional Violations, The Claims Against The Municipal Entities Must Be Dismissed Because There Is No Basis For Imposing Municipal Entity Liability**

Plaintiff alleges that the City of Hackensack and the Hackensack Police Department are liable for failing to properly select, train, supervise, promote and discipline police officers and supervisory police officers. (*See* Compl. ¶ 32). Municipal entities may be sued under 42 U.S.C. § 1983 only for acts implementing an official policy, practice, or custom. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978). A plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury

suffered. *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984). A course of conduct is considered to be a custom when, though not authorized by law, such practices, known of and acquiesced in by a policy maker, are so permanent and well-settled as to virtually constitute law. *See Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). There is no basis for extending municipal liability in this case.

Plaintiff presents no evidence of a policy or practice of discrimination by the defendants. In fact, plaintiff admits that his claims against the police department or the City do not involve a policy of discrimination. (*See* Pl.'s Dep. at 60:21-25) ("I'm not alleging that they had a policy in effect that caused them to violate [my civil rights], but I'm alleging that their actions did. I'm not alleging . . . that they had that type of policy. I would hope not."). Because there is no evidence before the Court that the alleged constitutional violations resulted from any municipal policy, custom, or practice, no municipal liability can extend to the police department or the City even assuming, *arguendo*, that any constitutional violations occurred.

V.     **The State Tort Law Claims Are Time Barred Under The New Jersey Tort Claims Act**

Liberally construed, plaintiff's complaint asserts state tort law claims for false arrest, false imprisonment, and intentional and negligent infliction of emotional distress. (*See* Compl. ¶¶ 35, 37). These claims are governed by the New Jersey Tort Claims Act ("Act"). *See Velez v. City of Jersey City*, 850 A.2d 1238, 1244 (N.J. 2004) (holding that the Act applies to intentional as well as negligent conduct); *Epstein v. State*, 709 A.2d 1353, 1354 (N.J. Super. Ct. App. Div. 1998) (barring claims for emotional distress); *Pisano v. City of Union City*, 487 A.2d 1296, 1297 (N.J.

13

Super. Ct. Law Div. 1984) (finding that false arrest and false imprisonment must abide by the Act's 90 day statute of limitations); *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 602 (D.N.J. 2002) (noting that false arrest and intentional infliction of emotional distress are subject to the Act's requirements).

Under the Act, in order to properly assert these claims against the defendants, plaintiff was required to "file his claim with the public entity within ninety days of accrual of his claim . . . ." N.J.S.A. 59:8-8(a) (1994). Here, plaintiff's claims accrued, at the latest, on May 9, 2002, the day he was released on bail. After this date, the record indicates that plaintiff had no further contact with the defendants in connection with this incident. Consequently, in order to preserve his state claims, plaintiff's notice had to be filed within 90 days of May 9, 2002. It is undisputed that plaintiff's first notice to defendants, whether by letter or by the filing of the Complaint, occurred almost two years after the incident. (*See* Pl.'s Dep. at 64:14). Hence, plaintiff's state claims are "forever barred" by the statute of limitations of the Act. N.J.S.A. 59:8-8.

**VI.    The Defendants' Request For Sanctions Is Denied**

The defendants move for sanctions against plaintiff, alleging plaintiff caused unnecessary work by frivolously requesting the production of certain employee records.[1] (*See* Def.'s Br. at 19). The plaintiff objects to defendants' motion and alleges that he did not request this work. The record supports plaintiff's claim.

The defendants cite their Exhibit J in support of the allegation that plaintiff requested certain employee records during the course of discovery. (*See id.*). However, Exhibit J,

---

[1]    It is worth noting that defendants cite no authority for sanctioning plaintiff.

submitted under certification by Deena B. Rosendahl on May 23, 2005, and received by the Court on May 25, 2005, is a "true copy of Plaintiff's Disclosure Regarding Expert Witness." (*See* Rosendahl Cert. ¶ 12).  Because there is no evidence that plaintiff requested the disputed work, defendants' request for sanctions is **DENIED**.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted, plaintiff's complaint is dismissed in its entirety, and defendants' request for sanctions is denied.

**DATED**: August 11, 2005                                       s/ William J. Martini                
                                                                                                            **William J. Martini, U.S.D.J.**